IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

EJS Properties, LLC,                                    Case No. 3:04CV7312

             Plaintiff

      v.                                                    ORDER

City of Toledo, et al.,

             Defendants

      This is a civil rights case in which plaintiff, EJS Properties, LLC (EJS) raised claims under

42 U.S.C. § 1983 and Ohio state law against defendants City of Toledo (the City), and former

Toledo City Councilman Robert McCloskey.

      Jurisdiction is proper under 28 U.S.C. § 1331 and § 1367.

      Pending is EJS' substitute motion for reconsideration [Doc. 347] of my August 27, 2009,

Order [Doc. 336]. For the following reasons, EJS' motion shall be denied.

**Background**

      I discussed the facts of this case at length in the August 27, 2009, Order. *EJS Props., LLC*

*v. City of Toledo*, 651 F. Supp. 2d 743 (N.D. Ohio 2009) (*EJS I*).

In that Order, I held: 1) defendants did not violate EJS's substantive or procedural due process rights because EJS could not establish a protected property interest; 2) defendants did not violate EJS's equal protection rights because it failed to show it was similarly situated to the Toledo Public Schools, which it claims the defendants had improperly treated more favorably than it; 3) defendants did not violate EJS's First Amendment right to petition the government for redress of grievances; 4) the City was immune from EJS's claim of tortious interference with a business relationship; and 5) EJS presented a genuine issue of material fact as to whether McCloskey tortiously interfered with a business relationship. *EJS I*, *supra*, 651 F. Supp. 2d 743.

On August 31, 2009, EJS filed a motion for reconsideration of my Order. [Doc. 340]. EJS argued that I: 1) overlooked its liberty interest; 2) incorrectly concluded that it lacked a protected property interest; 3) assumed facts in favor of the moving party; 4) incorrectly concluded that the "shocks the conscience" standard is not an alternative avenue to establish liability under § 1983; and 5) incorrectly concluded that it had no First Amendment claim. EJS also requested that I transfer the case to the Northern District of Ohio, Eastern Division.

Defendants responded, contending that my original order was correct. [Docs. 343, 344].

Following the Sixth Circuit's decision in *Wedgewood Limited Partnership I v. Township of Liberty, Ohio*, 610 F.3d 340 (6th Cir. 2010),[1] I requested a substitute motion for reconsideration briefing from the parties to address: 1) *Wedgewood*'s impact on the instant case; and 2) what, if any,

---

[1] In October, 2009, I learned that I was to be a member, by designation, of the panel assigned to decide the appeal in *Wedgewood Partners*. Because issues raised in the appeal appeared to some extent to be congruent with issues in this case, I withheld further consideration of the pending motion pending the decision in that case.

2

question might be certified to the Ohio Supreme Court for determination. The parties have submitted

substitute briefs. [Docs. 347, 349, 350 and 351].[2]

## Standard of Review

### *Reconsideration*

A motion to amend or alter judgment under the Federal Rules of Civil Procedure 59(e) calls

for the court to reconsider its decision after the entry of final judgment. *Pechatsko v. Comm'r of Soc.*

*Sec.*, 369 F. Supp. 2d 909, 911 (N.D. Ohio 2004). The motion is not a substitute for appeal and does

not give an unhappy litigant a basis for rearguing the case. *Id.*

Three situations justify altering or amending a judgment under Rule 59(e): 1) newly

discovered evidence; 2) an intervening change in controlling law; or 3) a need to correct clear legal

error to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

A district court has great discretion in deciding whether to grant relief under Rule 59(e). *Id.* at

619-20.

It is not the function of Rule 59 motion "either to renew arguments already considered and

rejected by a court, or 'to proffer a new legal theory or new evidence to support a prior argument

when the legal theory or argument could, with due diligence, have been discovered and offered

during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*,

930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August 1993 Regular Grand Jury*, 854 F.

Supp. 1403, 1408 (S.D. Ind. 1994)).

### *Summary Judgment*

---

[2] The parties agree that no question presented needs to be certified to the Ohio Supreme
Court.

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

### Discussion

### I. § 1983 Claims

As stated in my August 27, 2009, Order, to bring a § 1983 challenge, a plaintiff must first demonstrate a violation of its constitutional rights. *See, e.g.*, *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) ("If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law.").

EJS contends that I erred in dismissing its § 1983 claims based on a finding that it had not asserted a cognizable constitutional claim.

## A. Procedural Due Process

To establish a procedural due process claim under § 1983, a plaintiff must establish: 1) a protectable life, liberty or property interest; 2) deprivation of such interest; and 3) "the state did not afford  .  .  .  adequate procedural rights prior to" the deprivation.  *E.g., Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

### 1. Liberty Interest

EJS argues that it "had a liberty interest in a decision from City Council free from corruption and bribery regarding its rezoning application," [Doc. 347, at 23], and a "liberty interest [in] access to a non-corrupt municipal decision-making process," [*Id.* at 24]. EJS asserts, essentially, a liberty interest in an unbiased decision-making process in connection with its rezoning application.[3]

Defendants respond: 1) no liberty interest is implicated here; and 2) failure of process is not on its own a liberty interest, but a basis upon which I may find a due process violation once a protected liberty – or property – interest is established.

The Fourteenth Amendment to the United States Constitution provides: "[N]or shall any State deprive any person of life, *liberty*, or property, without due process of law." U.S. Const. amend. XIV, § 1.

---

[3] In its original motion for reconsideration, EJS argued the interest in freedom to contract as a liberty interest. Because EJS now argues that its contracts created a property interest, I address its motion and arguments accordingly.

To the extent EJS still intends to maintain an argument based on defendants' alleged interference with its liberty interest in the right to contract that claim would also fail. For similar reasons to those stated in Part I.A.2.c, *infra*, I find that EJS has failed to create a genuine issue of material fact on this claim. Defendants did not interfere in any way with EJS' contracts as those contracts were explicitly contingent on rezoning.

Deprivation of *either* a liberty interest or a property interest may support a due process §

1983 claim. *See, e.g.*, *Bd. of Regents. v. Roth*, 408 U.S. 564, 572 (1972) (noting that the Supreme

Court "has required due process protections for deprivations of liberty"); *Braun v. Ann Arbor*

*Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (noting that a section 1983 plaintiff asserting a due

process claim must establish the existence of a constitutionally protected property *or* liberty

interest).[4]

Protected liberty interests "may arise from two sources – the Due Process Clause itself and

the laws of the states." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459 (1989) (internal quotation

and citation omitted). "Only if [I] find a protected interest do [I] ask whether the deprivation of that

interest was in accordance with due process." *Tony L. By & Through Simpson v. Childers*, 71 F.3d

1182, 1185 (6th Cir. 1995) (citing *Thompson*, *supra*, 490 U.S. at 460)).

In *United of Omaha Life Insurance Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992), the

Sixth Circuit discussed the parameters of a protected liberty interest:

> A protected liberty interest goes beyond freedom from bodily restraint; it includes
> the right of the individual to contract, to engage in any of the common occupations
> of life, to acquire useful knowledge and to enjoy generally those privileges long
> recognized as essential to the orderly pursuit of happiness by free men. *Board of*
> *Regents v. Roth*, 408 U.S. 564, 572 (1972). Although this definition of liberty interest
> has been somewhat narrowed by later Supreme Court cases, *see, e.g.*, *Paul v. Davis*,
> 424 U.S. 693 (1976), it is recognized that the due process clause forbids arbitrary
> deprivation of liberty "'[w]here a person's good name, reputation, honor, or integrity
> is at stake because of what the government is doing to him.'" *Goss v. Lopez*, 419
> U.S. 565, 574 (1975) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437
> (1971)).

---

[4] I focused my original Order on EJS's asserted property interest because this is how EJS
focused its briefs.

6

EJS does not allege that any state law create a liberty interest, so I turn to EJS' claim that it has a liberty interest under the Due Process Clause.

A decision by a biased or corrupt decision-maker may constitute a deprivation of procedural due process. An unbiased decision-maker, however, is relevant to *what process is due*; mere bias, without an effect on a cognizable liberty interest, is not a liberty interest. *See McGuire v. City of Moraine*, 178 F. Supp. 2d 882, 892-93 (S.D. Ohio 2001) ("Even if all of the Plaintiffs' factual allegations are true, however, it is well-settled that they cannot establish a violation of substantive or procedural due process, as a matter of law [if a property interest is at stake], unless they possessed a property interest  .  .  .  . The Plaintiffs' allegations of bias, prejudice, partiality and other improprieties do not establish the existence of such a property interest."); *Clarkco Landfill Co. v. Clark County Solid Waste Management Dist.*, 110 F. Supp. 2d 627, 635 (S.D. Ohio 1999) ("[A] fair an impartial decision maker is part of the process that is due [if a property interest is at stake], instead of the property interest being deprived."); *White Oak Prop. Dev., LLC v. Wash. Twp.* (*White Oak*), 2009 WL 961175, *14-15 (S.D. Ohio 2009) (holding that no substantive due process violation occurs, in and of itself, where a condominium proposal was submitted to an allegedly biased decision maker, but plaintiff failed to first establish a protected liberty or property interest in the proposal).[5]

_____

[5] In the prison context, courts hold that a prisoner is entitled to an impartial decision-maker before he is deprived of some liberty interest. *See, e.g.*, *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992); *Ferguson v. Pulver*, 2006 WL 2289212, *3 (W.D. Wis.) ("To trigger the right to an impartial decision maker and other procedural protections, petitioner's allegations must [first] implicate a protected liberty interest."). Again, this right to an unbiased decision-maker is part of the *process due*, it is not itself the liberty interest.

7

As one court clearly explained: "[P]rejudice and bias constitute the manner in which [a plaintiff] has been denied due process. In other words, a fair and impartial decision maker is part of the process that is due, instead of the property interest being deprived." *Clarkco Landfill*, *supra*, 110 F. Supp. 2d at 635.[6]

In *White Oak*, 2009 WL 961175, *1, plaintiff, a property owner, presented a residential condominium development proposal to the township planning commission. The zoning commission and township trustees denied the proposal. Plaintiff alleged that the commission chairman met secretly with two trustees before denying the proposal.

The court in *White Oak* initially found that plaintiff "did not have a protected property interest in any re-zoning of its property." *Id.*, *14.[7] In response to plaintiff's claim that the allegedly biased zoning commission chairman's participation in the denial constituted a due process violation, the court stated:

> In addition, the Court finds that [the allegedly biased decision-maker's] participation in the decision to reject White Oak's proposal, in and of itself, does not create a substantive due process violation. The Court finds White Oak's citation to *Wilkerson v. Johnson*, 699 F.2d 325 (6th Cir.1983) misplaced. There, the Sixth Circuit explained: "The regular and impartial administration of public rules governing these interests, as required by due process, prohibits the subtle distortions of prejudice and bias as well as gross governmental violations exemplified by bribery and corruption and the punishment of political and economic enemies through the administrative process." *Id.* at 328, citing *Gibson v. Berryhill*, 411 U.S. 564, 578-79 (1973)

---

[6] EJS distinguishes *Clarkco Landfill* on the grounds that the plaintiff in that case presented only a property – not a liberty – interest. *Clarkco Landfill* is, however, instructive in that it emphasizes the need *first* to identify a constitutionally-protected interest, before determining what procedures are required for due process.

[7] EJS argues that *White Oak* is distinguishable from the instant case because in that case, "[t]here were no allegations of bribery, extortion, or the pay-for-play conduct to which Defendants subjected EJS." [Doc. 351, at 17]. I disagree. The court in *White Oak* addressed specifically whether an allegedly biased decision-maker's participation in a vote alone constitutes a due process violation.

(procedural due process violated by Alabama State Board of Optometry because those "with substantial pecuniary interests in legal proceedings should not adjudicate those disputes"). However, in *Wilkerson, there was no question that the plaintiff had a liberty interest in the barbershop license*. Here, White Oak has failed to establish that it has either a liberty or property interest in the approval of its Proposal.

*Id.*, *15 (emphasis added).

The court in *White Oak*'s sufficiently distinguished the opinion in *Wilkerson* on which EJS now relies. In *Wilkerson* the court did not hold that a person has an underlying, freestanding liberty interest in uncorrupted process.

Similarly, while the court in *Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890, 896 n.8 (6th Cir. 1991), stated that "it is the hallmark of procedural due process that a biased decision-maker is constitutionally unacceptable," it did so only *after* finding an underlying property interest, and did not discuss liberty interests at all.[8]

I, thus, agree with McCloskey that "freedom from submission to a biased or corrupt decision maker is not itself a liberty interest, but rather constitutes the manner in which due process has been denied where a plaintiff *has first established* a predicate liberty or property interest." [Doc. 350, at

---

[8] I also find EJS' citation to *Kennedy v. Cincinnati*, 595 F.3d 327 (6th Cir. 2010), inapposite. There, a city banned an individual from accessing municipal property. The Sixth Circuit held the plaintiff had a liberty interest in remaining in public spaces. This interest is far different than the liberty interest EJS seeks to create in application to an unbiased decision-maker.

I similarly find EJS' citation to the district court opinions in *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 578 F. Supp. 2d 941, 948-51 (S.D. Ohio 2008) and *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 456 F. Supp. 2d 904, 937 (S.D. Ohio 2006), unpersuasive. While the district court found that plaintiff had a liberty interest in the drafting and adoption of a zoning amendment, it failed to specifically articulate the source of that interest.

24 (emphasis added)]. EJS has pointed to no case indicating that there is an independent liberty interest in an unbiased decision-maker, and I decline to define a novel liberty interest in this case.[9]

## 2. Property Interest

EJS argues that I erred in finding it had no protected property interest in the rezoning request or in its purchase or lease agreements. Following additional briefing in light of *Wedgewood*, *supra*, I reach the same conclusion as I did previously.

### a. Rezoning Request

EJS first argues that it had a protectable property interest based on "its mutually explicit understanding with Defendants which created a justifiable expectation of entitlement to the rezoning it requested." [Doc. 347, at 13]. EJS argues that *Wedgewood* supports this conclusion.

---

[9] EJS' original motion for reconsideration, and now its reply, cite *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989), for the proposition that there is a liberty interest in "freedom from governmental corruption." [Docs. 340, at 4; 351, at 16].

The court in *Hammond* stated:

> It is true that [s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury sufficient to warrant injunctive relief. The injury is the submission itself; the biased (or potentially biased) decision may also result in injury, but it is a separate, distinct one. The administrative process requires the appearance of fairness and the absence of a probability of outside influences on the adjudicator; it does not require proof of actual partiality.

*Id.* at 176 (citations and quotations omitted).

As I noted in my original Order, *Hammond* stands for the proposition that "[s]ubmission to a fatally biased decision-making process is the injury, and courts do not have to wait for the outcome of the deficient process to review it." *EJS I*, *supra*, 651 F. Supp. 2d at 756. *Hammond* addressed finality, exhaustion and ripeness, not whether a biased process implicates a liberty interest. In fact, the word "liberty" appears nowhere in the *Hammond* opinion.

Defendants respond that *Wedgewood* is factually distinguishable and inapplicable to the instant case. Defendants also argue that EJS cannot show a "mutually explicit understanding" giving rise to a property interest.

The Constitution does not create property interests. Instead, property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, *supra*, 408 U.S. at 577. I must, thus, look to state law to determine whether EJS had a protectable property interest.

A property interest must be based on something more than unilateral anticipation. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) ("[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary") (citations omitted).

Plaintiff must have a legitimate claim of entitlement or justifiable expectation of the asserted property interest. If the governing body has discretion to deny plaintiff's asserted property interest, then plaintiff has no legitimate claim of entitlement or reasonable expectation, and therefore no property interest. *See, e.g.*, *id.* at 410 (noting that "in order to assert a property interest . . . [a plaintiff] must point to some policy, law or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit"); *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 203 (6th Cir. 1995) (holding that plaintiff "had no justifiable expectation that its plan would be approved because the board had discretion to deny a special use permit despite [plaintiff's] compliance with the minimum requirements"); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (holding that plaintiff had to "demonstrate a property

11

interest in the use of the undeveloped parcel as a condominium complex" and to demonstrate this interest, plaintiff had to prove that the Zoning Appeals Board lacked "discretion to deny [plaintiff's] use of the land as a condominium complex if he complied with certain minimum, mandatory requirements.").

In *Wedgewood*, the plaintiff was a property owner who challenged the defendant township's enactment of zoning "Instructions" that adversely affected its ability to develop its property. 610 F.3d at 344.

There, the plaintiff submitted a request for zoning variances to develop a Wal-Mart. After denying plaintiff's application, the defendant Liberty Township Trustees issued zoning Instructions that, among other things, required all major plan modifications to complete a two-step approval process. *Id.* at 346. No notice or public hearing was held prior to issuance of the Instructions. Six months later, Wedgewood filed an application for a zoning permit to build a smaller Wal-Mart. The application complied with the pre-Instructions commercial space requirements, but plaintiff "did not submit its application as a major plan of modification as specified in the newly adopted Instructions." *Id.* at 347. The township zoning commission denied the application based on the Instructions. *Id.*

In finding that the plaintiff had a protectable property interest in the zoning classification that existed *before* the Instructions, the court concluded that:

> [T]he Ohio courts would hold that . . . Wedgewood had a "justifiable expectation" that its zoning classification – its right to develop up to 220,857 square feet of commercial space on subarea 3 – was vested unless or until the Commission and Trustees passed an amendment to the WCCDP comporting with the notice and hearing requirements set forth in Ohio Rev. Code § 519.12. Specifically, Articles XIV § 14.06(F) and XXVIII of the Liberty Township Zoning Resolution, Ohio Rev. Code 519.12, and the WCCDP itself, provided the "rules" and "understandings" under Ohio law "that secure[d] . . . [its] claim[] of entitlement" to its zoning

12

classification.  .   .   .  Wedgewood possessed a protected property interest in subarea 3's zoning, notwithstanding the Trustees' *ultra vires* amendment.

*Id.* at 353-54 (internal citations omitted).[10]

Ohio law distinguishes between property owners and those who purchase property with the hopes of a zoning change; Ohio does not recognize a protected property interest in *requested rezoning*: "Ohio courts, as well as the courts of numerous other states, agree that one who purchases property in the hopes of gambling on securing a zoning modification has no right to complain when the legislative body declines to rezone for the benefit of the gambling buyer." *Smythe v. Butler Twp.*, 85 Ohio App. 3d 616, 620 (1993).

Contrary to EJS' arguments, *Wedgewood* does not change the analysis here. First, *Wedgewood* speaks to an Ohio property *owner*'s interest in an *existing* zoning classification. Here, however, EJS is not the owner, but rather a potential purchaser, and it is asserting an interest in a zoning *change*.[11] *Wedgewood*, does not, therefore, directly address a situation involving a potential property purchaser, rather than a property owner.

This is not a case where the City rezoned property to limit EJS' use of the property. Rather, EJS knew that the property was zoned M-2 when it conditionally offered to purchase the property.

---

[10] After finding that the plaintiff had a protectable property interest, the court then found that the the defendants denied the plaintiff's due process when they did not give notice or hold a hearing before enacting the Instructions altering plaintiff's ability to build on its property. *Id.* at 354-55.

[11] EJS argues that "the requested rezoning was tantamount to an existing zoning classification." [Doc. 351, at 11]. This argument simply ignores the discretion the Toledo Municipal Code, § 1111.01(a), gives to City Council.

Factually, thus, to the extent that *Wedgewood* recognizes a new property interest, it is inapplicable here.[12]

Second, I disagree with EJS' argument that it has presented evidence of a "mutually explicit understanding" that gives rise to a property interest here. EJS argues that "the understanding between EJS and Defendants that the City had already approved and would grant *pro forma* final approval of EJS' rezoning request created a constitutionally protected property right in EJS." [Doc. 347, at 14]. In support of this argument, EJS points out that: 1) the Plan Commission and the Zoning and Planning Committee had approved its rezoning proposal; and 2) McCloskey represented that getting rezoning approval would be no problem.[13]

EJS' first argument – that the rezoning had already been approved by the Plan Commission and the Zoning and Planning Committee – ignores the discretion that the City Council retained at the approval stage:

---

[12] I thus agree with defendants that, as regards the Sixth Circuit's opinion in *Wedgewood*: "[w]hether Ohio law recognizes a property interest in a property owner's zoning classification is immaterial here. EJS did not own the property." [Doc. 350, at 10].

[13] EJS also relies on *Nasierowski*, *supra*, 949 F.2d at 897, to support its argument that a mutual understanding existed. EJS contends that *Nasierowski* is "directly on point." [Doc. 347, at 14].

The court in *Nasierowski*, however, held that a property *owner* has a property interest in a zoning classification where the owner undertakes acts, in reliance on the zoning classification, of such a nature that a rezoning would be to his substantial detriment. *Id.* at 896-97. In addition to addressing the property interest of an *owner*, rather than a potential purchaser, *Nasierowski* addressed property interests under Michigan, not Ohio, law. Even if, thus, the interest in *Nasierowski* were applicable in Ohio, EJS is not the property owner and it does not apply.

EJS' arguments, thus, based on *Nasierowski* that it has a property interest because it relied on McCloskey's representations, fail. *See also Triomphe*, *supra*, 49 F.3d at 203 ("Although the City knew that Triomphe intended to build condominium units on the property, this is insufficient to create a state law property interest in the special use permit." ).

14

> Council *may*, after public notice and hearings as provided in this section and after report by the City Plan Commission  .  .  .  *amend, supplement or change* the text of District Map herein or subsequently established.

Toledo Municipal Code § 1111.01(a) (emphasis added).[14]

McCloskey correctly argues: "If Council did not have such discretion, then a three-tier voting plan would be unnecessary and the vote of the Zoning and Planning Committee would be all that is required." [Doc. 350, at 16]. The City Council *did* have discretion to deny the rezoning, and thus no property interest arises. *See, e.g.*, *Silver*, *supra*, 966 F.2d at 1036.[15]

As to EJS' second argument – that McCloskey stated rezoning would be no problem – EJS has not pointed to a single case stating that a property interest in a zoning *chang*e arises when a member of a City Council gives such assurances. Unlike the plaintiff in *Wedgewood*, EJS points to no city regulation or state statute the creates a mutually explicit understanding that the rezoning would be approved.[16] I thus find that EJS has failed to create a genuine issue of material fact as to whether it had a "mutually explicit understanding" that the rezoning would be approved.[17]

### b. Substantive Limits on Discretion

---

[14] The Ohio Revised Code, § 713.10, also grants city councils discretion to approve or deny ordinances for zoning changes: "The legislative authority of such municipal corporation may amend or change the number, shape, area, or [zoning] regulations of or within any district[.]"

[15] This discretion is not altered by the fact that the Zoning and Planning Committee is made up of all members of the City Council.

[16] In *Wedgewood*, the court identified: 1) the Liberty Township Zoning Resolution; 2) an Ohio statute governing procedures for zoning changes; and 3) the Wedgewood Commerce Center Development plan as the state law "rules and understandings" giving rise to Wedgewood's property interest. 610 F.3d at 353-54.

[17] EJS also relies on Toledo Municipal Code § 1111.0115 to argue that the Council approval stage is a mere formality. Such reliance is flawed, as the City points out, because this provision of the code became part of the City Code in March, 2004.

EJS contends that it even if the City Council had discretion to deny its rezoning request, there were substantive limits on that discretion. Defendants respond that no such substantive limits giving rise to a property interest exist here.

Certain limits on discretion can create property interests. "In order for limits on discretion to create property interests," however, "they must be *substantive* limits on discretion." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520 (6th Cir. 2007).

EJS relies on *Experimental Holdings* to argue that there is a substantive limitation giving rise to a property right here. The court in *Experimental Holdings* discussed hypothetically the type of substantive limitation necessary to create a protected property right:

> There would be a substantive limit on discretion if, for instance, a state could not refuse to renew a certain occupational license unless the licensee overcharged customers. The fact that the state gives the licensee certain *procedural* rights in determining the substantive right (e.g., an oral hearing, appointed counsel, or two administrative appeals) does not turn those procedural rights into federal due process rights. Nor could it, without simply rendering state procedural law enforceable in federal court. In the given example there is arguably a property interest in not losing the license because the state lacks the discretion to deny renewal if the licensee never overcharged customers.

*Id.*

In rejecting the plaintiff's claim in that case, however, the court in *Experimental Holdings*, the court explained:

> In the instant case, however, there is nothing that substantively gives-on certain factual conditions-the bidder the right to the contract . . . EHI has not attempted to establish a substantive entitlement other than to point out that the Commissioner was required to award the contract based on the best interest of the Commonwealth. But the Commissioner could have declined to award the contract to anyone at all, KRS § 56.803(16)(a), and the statute merely includes an inexhaustive list of considerations on which to base a decision regarding which proposal is the "best proposal in the interest of the Commonwealth," id. § 56.803(15)(a). *There is nothing in the statute indicating an outcome certain to happen and that EHI was necessarily entitled to the contract.* Because EHI was not entitled to the contract, it has not

16

asserted a cognizable property interest, and the district court was therefore correct in dismissing plaintiff's federal law claims against defendants, in both their official and individual capacities.

*Id.* at 520 (emphasis added) (internal citations omitted).

Both examples in *Experimental Holdings*, *supra*, indicate that a substantive limitation giving rise to a property right is thus one that eliminates the actor's discretion to deny when certain requirements are met.

EJS argues that "the discretion of City Council to reject the EJS rezoning ordinance was substantively limited by federal and state laws making it unlawful for public officials to solicit monies in exchange for governmental approvals." [Doc. 347, at 18].

The limitations imposed by state and federal bribery laws are simply not the sort of substantive limitation necessary to create a protected property right because they do not *entitle* plaintiff to its rezoning request. No limitation existed that limited the City Council's discretion that would have *required* the City to grant EJS' rezoning application. *See Med Corp.*, *supra*, 296 F.3d at 410 ("[I]n order to assert a property interest  .  .  .  [a plaintiff] must point to some policy, law or mutually explicit understanding that *both confers the benefit and limits the discretion* of the City to rescind the benefit.") (emphasis added).

If the vote of the Zoning and Planning Commission to approve rezoning created a property interest, this would negate the discretion given to the City Council explicit in Toledo Municipal Code § 1101.01(a). I thus agree with McCloskey that, "[t]aken to its natural conclusion, EJS' argument would result in a finding of a protectable property interest, and a violation therefore, every time a citizen applies to Council, gets approval at steps one and two, and City Council denies the application." [Doc. 350, at 20].

17

### c. Contract

EJS also asserts that it "held a protected property interest in its Agreement to purchase the Pilkington property and its lease agreement with Lake Erie Academy." [Doc. 347, at 21]. EJS asserts that I overlooked this interest in my original order.

Defendants respond that this interest is not implicated in this case. Specifically, the City argues that "City Council did not interfere with EJS' protected contract rights in the agreements with Pilkington and the charter school. At the time the parties entered into their agreements, everyone knew that the existing M-2 zoning did not permit the East Broadway property to be used as a school." [Doc. 249, at 9].

Ohio law certainly protects a person's right to contract. *See Joseph Bros. v. Brown*, 65 Ohio App. 2d 43, 46 (1979) ("The right to contract is specifically guaranteed by Section 1, Article I of the Ohio Constitution and is within the protection of the Fourteenth Amendment to the United States Constitution. It is a property right.") (citing *Cleveland v. Clements Bros. Constr. Co.*, 67 Ohio St. 197 (1902)).

I agree with defendants, however, that EJS has not presented any evidence to show that it was prevented from exercising its right to contract. At the time EJS entered into the Purchase Agreement with Pilkington and the lease agreement with the charter school, it knew that the existing zoning did not permit the property at issue to be used as a school. The City Council's actions did nothing to change or interfere with these agreements as the agreements themselves were specifically conditioned on approval of a zoning change.[18] *Cf. Wilson*, *supra*, 1998 WL 744089, *4 ("[O]ne who

---

[18] EJS argues that I "incorrectly state[d] that EJS has no such property interest because it has no legitimate claim of entitlement to the re-zoning ordinance, purchase or lease agreement.'" [Doc. 347, at 21 (quoting *EJS I*, *supra*, 651 F. Supp. 2d at ]. While this wording may have been imprecise

18

purchases property in the hopes of gambling on securing a change in zoning has no right to complain if the legislative body declines to rezone the property for the gambling buyer's benefit.").

Because, thus, EJS had failed to create a genuine issue of material fact regarding an underlying property or liberty interest, plaintiffs had no cognizable procedural due process challenge to the allegedly biased decision making process.

## B. Substantive Due Process

EJS contends that I erred in granting summary judgment to defendants on its substantive due process claim. EJS specifically contends that there are disputed issues of material fact as to whether defendants acted arbitrarily and capriciously and with no rational relationship to a legitimate government interest.

Citizens have a substantive due process right "not to be subjected to arbitrary or irrational zoning decisions." *Pearson v. Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).

---

– and EJS has a property interest its contracts – EJS simply has not presented any evidence that defendants' actions interfered with its ability to enter those contracts. Both contracts were contingent on the City Council approving EJS' rezoning request.

EJS also contends that *Zeltig Land Dev. Corp. v. Bainbridge Twp. Bd. of Trs.* (*Zeltig*), 75 Ohio App. 3d 302 (1991) and *Wilson v. Trs. Union Twp.*, 1998 WL 744089 (Ohio App.), support its claim that it had a property interest in the requested rezoning. These cases are, however, distinguishable. In *Zeltig*, the property owner sold land, but retained a contingent interest in the property. 75 Ohio App. 3d at 306. The court held that this was sufficient for *standing* purposes, and the plaintiff could challenge the constitutionality of an existing zoning ordinance. *Id.* The court did not, however, make any finding as to whether the plaintiff had a *property interest* based on a contract. In *Wilson*, the plaintiff entered into an option contract to purchase land, contingent upon rezoning. 1998 WL 744089, *1. Again, the court found the continent interest sufficient for *standing* purposes, such that the plaintiff was permitted to challenge the *existing* zoning classification. *Id.*, *5.

Both of these cases are thus about a plaintiff's *standing* to challenge an *existing* zoning classification. Neither speaks to whether a property purchaser has a constitutionally-protected property interest in expected rezoning.

"To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002) (unpublished disposition); *see also Silver*, *supra*, 966 F.2d at 1036 ("To establish a violation of substantive due process, a plaintiff *must first establish* the existence of a constitutionally-protected property or liberty interest.") (emphasis added); *Andreano v. City of Westlake*, 136 F. App'x 865, 970-71 (6th Cir. 2005) (unpublished disposition) ("In the absence of a constitutionally protected [property or liberty] interest, arbitrary and capricious conduct will not support a substantive due process claim.").

As discussed above, and as stated in my original opinion, EJS has failed to establish a property or liberty interest. As such, EJS cannot demonstrate a substantive due process violation. *Silver*, *supra*, 966 F.2d at 1036; *Andreano*, *supra*, 136 F. App'x at 970-71; *Tri-Corp. Mgmt. Co.*, *supra*, 33 F. App'x at 747. As EJS has not presented evidence that "a constitutionally-protected property or liberty interest exists," *Silver*, *supra*, 966 F.2d at 1036, it simply cannot demonstrate a substantive due process violation. I thus need not reach whether the Council's actions were arbitrary and capricious.[19]

---

[19] Even assuming *arguendo* that EJS is correct that the court in *Pearson*'s statement that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions," 961 F.2d at 1217, is divorced from the requirement of an underlying property or liberty interest, defendants would still be entitled to summary judgment.

"A local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose." *Richardson v. Twp. of Brady*, 218 F.3d 508, 513 (6th Cir. 2000). "Federal court review of a zoning ordinance may only determine whether it is clearly arbitrary and unreasonable in the very restricted sense that it had no substantial relation to the public health, safety, morals, or general welfare." *Pearson*, *supra*, 961 F.2d at 1223 (internal quotation omitted). "[I]f any conceivable legitimate governmental interest supports the contested [law], that measure  .  .  .  cannot offend substantive

### C. Access to Government to Petition for Redress of Grievances

EJS contends that I erred in holding that defendants did not violate its First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend. I.

EJS's argument for reconsideration on this issue is almost identical to its original motion in opposition to summary judgment. EJS presents no new argument nor any new legal authority in support of its First Amendment claim. Rather, EJS simply disagrees with my decision.

As I have previously stated, "[d]isappointed counsel might sincerely believe that the Court of Appeals might find the work not to have been done properly. But that does not justify making the trial court do the work again." *Miller v. Norfolk S. Ry.*, 208 F. Supp. 2d 851, 854 (N.D. Ohio 2002). It is not the function of a Rule 59 motion "to renew arguments already considered and rejected by a court." *McConocha*, *supra*, 930 F. Supp. at 1184.

---

due process norms." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 520 (6th Cir. 1997).

While EJS presents evidence that McCloskey made a monetary demand of EJS, and conditioned his support for the rezoning on EJS' compliance with that demand, it does not present evidence to support a finding that the decision of the City Council to deny the rezoning ordinance was not rationally related to a legitimate governmental purpose. At most, EJS' evidence indicates that McCloskey had an improper reason for voting against the rezoning, other council members knew about his improper reasons, and other council members factored McCloskey's vote into their decision because he was the District Representative.

Preserving large tracts of land for industrial, manufacturing or commercial use and developing an industrial corridor is a legitimate governmental interest. EJS has not shown that defendants' actions, in failing to pass the rezoning ordinance, are not rationally related to this interest. EJS has, thus, failed to present a genuine issue of material fact as to whether defendants' actions were arbitrary and capricious.

I remain convinced of the reasoning underlying my original order on EJS' First Amendment claim. *EJS I*, *supra*, 651 F. Supp. 2d at 757-58. As such, EJS' motion for reconsideration of my decision on this claim is denied.[20]

Because EJS has failed to present a genuine issue of material fact regarding whether defendants violated its constitutional rights, its § 1983 claims must fail. *See, e.g.*, *Marvin*, *supra*, 509 F.3d at 244.

### Conclusion

For the reasons stated in my prior opinion and those discussed above, it is hereby:

ORDERED THAT plaintiff's substitute motion for reconsideration [Doc. 347] be, and the same hereby is denied.[21]

So ordered.

s/James G. Carr
U.S. District Judge

---

[20] In a footnote, EJS also implies that it also challenges my conclusion on its Equal Protection claim. EJS, however, presents no argument on this point. As such, I do not address it. I remain convinced of the reasoning underlying the grant of summary judgment to defendants on that claim in my original Order. *See EJS I*, *supra*, 651 F. Supp. 2d at 757.

[21] I forego my customary imposition of attorneys' fees on a party which fails to prevail on a motion for reconsideration. The issues in this case are complex and of utmost importance. That EJS suffered a loss – perhaps a very substantial loss following McCloskey's actions that led to his conviction and imprisonment – does not appear disputed. But for the reasons that I express here and in my original opinion, I find no constitutional violation. But I do not fault EJS and its capable counsel for filing its motion for reconsideration. This is one – and perhaps the only – instance in which a second look is merited.

22